UNITED STATES of America, ex rel.
Bryan SANDAGER, Plaintiff,

v.

DELL MARKETING, L.P.; Vion Corporation; ImmixTechnology, Inc.; Government Acquisitions, Inc.; Emtec Federal, Inc.; Force 3, Inc.; Unistar–Sparco Computers, Inc.; Lyme Computer Systems, Inc.; Insight Public Sector, Inc.; Red River Computer Company; MA Federal, Inc.; Promark Technology, Inc.; Word Wide Technology, Inc.; AC Technology, Inc.; A & T Marketing, Inc., d/b/a A & T Networks; PC Specialists, Inc. a/k/a Technology Integration Group; PC Mall Gov, Inc.; and Commercial Data Systems, Inc.; Defendants.

Civil No. 08–4805 (PAM/TNL).

United States District Court,
D. Minnesota.

April 26, 2012.

D. Gerald Wilhelm, United States Attorney's Office, Charles A. Horowitz, Marshall H. Tanick, Seymour J. Mansfield, Mansfield Tanick & Cohen, PA, Christopher L. Lynch, Meghan M. Elliott, Richard Ihrig, Kelly G. Laudon, Jonathan M. Bye, Lindquist & Vennum, Thomas B. Heffelfinger, Best & Flanagan LLP, Minneapolis, MN, Jean B. Roth, Florida, FL, for Plaintiff.

Brian R. Stimson, Jeffrey A. Belkin, William H. Jordan, Alston & Bird LLP, Atlanta, GA, Daniel J. Cragg, Jeff H. Eckland, Mark J. Blando, Eckland & Blando, LLP, Minneapolis, MN, John A. Howard, Alston & Bird LLP, Los Angeles, CA, for Defendants Dell Marketing LP, Insight Public Sector, Inc., PC Specialists, Inc., and PC Mall Gov, Inc.

Anne W. Robinson, David R. Hazelton, Kyle R. Jefcoat, Latham & Watkins LLP, Washington, DC, Andrew W. Davis, Leonard Street and Deinard, PA, Minneapolis, MN, Douglas R. Peterson, Leonard Street and Deinard, Mankato, MN, for Defendant Vion Corporation.

Christopher M. Loveland, Jonathan S. Aronie, Sheppard Mullin, Washington, DC, David J. Wallace–Jackson, John W. Ursu, Greene Espel PLLP, Minneapolis, MN, for Defendants Immix Technology, Inc., Emtec Federal, Inc., and Unistar–Sparco Computers, Inc.

Barbara P. Berens, Justi R. Miller, Berens & Miller, PA, Minneapolis, MN, John M. Murdock, Benton Potter & Murdock PC, Falls Church, VA, Kathy C. Potter, Benton Potter & Murdock PC, Washington, DC, for Defendant Government Acquisitions, Inc.

Elisabeth Leigh Shu, Jessica C. Abrahams, Timothy K. Halloran, McKenna Long & Aldridge LLP, Washington, DC, Jonathan A. Strauss, Sonia L. Miller–Van Oort, Sapientia Law Group, Minneapolis, MN, for Defendant, Force 3, Inc.

Barney L. Brannen, Brannen Dunn & Stewart, Lyme, NH, Christopher M. Daniels, Jesse H. Kibort, Daniels & Wymore, PLLC, Plymouth, MN, for Defendant Lyme Computer Systems, Inc.

Amy K. Sterner, Heather M. McCann, William R. Stoeri, Andrew B. Brantingham, Dorsey & Whitney LLP, Minneapolis, MN, William Michael, Jr., Mayer Brown LLP, Chicago, IL, for Defendant Red River Computer Company.

Christopher R. Morris, Bassford Remele, PA, Minneapolis, MN, John Y. Lee, Gordon Feinblatt LLC, Baltimore, MD, for Defendant Marzik, Inc.

Jason Charles Rose, Venable LLP, Baltimore, MD, Scott A. Smith, Nilan Johnson Lewis PA, Minneapolis, MN, for Defendant Promark Technology, Inc.

David L. Lillehaug, Kevin C. Riach, Fredrikson & Byron PA, Minneapolis, MN, Robert T. Ebert, Jr., Bryan Cave LLP, St. Louis, MO, for Defendant World Wide Technology, Inc.

David D. Leishman, McGuire Woods LLP, Chicago, IL, Maurice A. Bellan, McGuire Woods LLP, Washington, DC, for Defendant A&T Marketing, Inc.

Paula Weseman Theisen, Meagher & Geer, PLLP, Minneapolis, MN, for Defendant Commercial Data Systems, Inc.

## MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on nine separate Motions to Dismiss filed by all

Defendants. For the reasons that follow, the Motions are granted.

## BACKGROUND

### A. Factual

This is a qui tam action brought by Relator Bryan Sandager. Sandager has worked as a corporate compliance officer in the computer technology field since 1988. Sandager currently works for Imation Corporation, a competitor of Defendants.

Defendants are Dell Marketing, L.P., Vion Corporation, ImmixTechnology, Inc., Government Acquisitions, Inc., Emtec Federal, Inc., Force 3, Inc., Unistar–Sparco Computers, Inc., Lyme Computer Systems, Inc., Insight Public Sector, Inc., Red River Computer Company, Inc., MA Federal, Inc., Marzik, Inc., Promark Technology, Inc., World Wide Technology, Inc., AC Technology, Inc.[1], A & T Marketing, Inc., PC Specialists, Inc., PC Mall Gov, Inc., and Commercial Data Systems, Inc. Defendants are in the business of selling computer equipment. Sandager alleges that through his long-held position in the industry he has learned that Defendants offered to sell the Government computer products that were not made in the United States or in approved designated countries, in violation of federal law.

Federal agencies are able to purchase commercial supplies, including computer equipment, through an on-line shopping service called GSA Advantage!. GSA Advantage! offers more than 11 million different products for sale to the Government. (Pl's Mem. at 23.) Yearly sales exceed $40 billion. (*Id.*) According to Sandager, Defendants Dell, PC Mall Gov, A & T, Unistar–Sparco, Insight Public Sector, Government Acquisitions, World Wide Technology, Emtec, and Force 3 collec-

tively offer more than 380,000 products for sale on GSA Advantage!. (*Id.*) In order to qualify to sell products through GSA Advantage!, vendors are required to meet certain criteria. One criterion is that the products comply with the Trade Agreements Act of 1979 ("TAA"), 19 U.S.C. § 2501, *et seq.*, which requires that the products sold to the Government be made or "substantially transformed" in the United States or certain designated countries. "Substantially transformed" means that the product was "transformed into a new and different article of commerce with a name, character, or use distinct from that of the article or articles from which it was so transformed." 19 U.S.C. § 2518(4)(B). The TAA is an adjunct to the Buy American Act of 1933 ("BAA"), which restricts the Government's ability to purchase products from non-domestic suppliers. 48 C.F.R. § 25.001(a)(1). When a vendor is qualified to sell products, the GSA agrees to a long-term government-wide contract to allow the products to be sold through GSA Advantage!. The contracts are referred to as "Schedule Contracts."

Sandager alleges that between July 31, 2002, and the present, Defendants defrauded the Government by offering to sell computer hard drives ("HDDs") and storage devices comprised of multiple HDDs through GSA Advantage! that were neither made in nor "substantially transformed" in the United States, as required by the TAA. The Schedule Contract applicable to such sales is referred to as "Schedule 70." Schedule 70 materials expressly state that the products must be compliant with the TAA. According to the Amended Complaint, Defendants' products were actually made in non-designated countries such as China, Thailand, and the

---

1. AC Technology has not been served with process and therefore is not a party to this case.

Philippines, and were not substantially transformed in the United States. Sandager contends that Defendants violated to the False Claims Act ("FCA") by misrepresenting and falsely certifying that their products comply with the TAA.

### B. Procedural

Sandager filed his original Complaint under seal on July 31, 2008. The Government investigated the allegations and on September 30, 2009, declined to intervene in the action, but requested that it be served with all pleadings and that its consent be solicited before the dismissal or settlement of the action. The Court issued an Order to that effect on October 5, 2009. Little else appears to have occurred in the case until Sandager filed an Amended Complaint in September 2011. Defendants have now moved to dismiss the Amended Complaint on the various grounds discussed below.

### C. Previously Filed Cases

Sandager's claims are similar to those raised in three earlier filed qui tam actions. On March 28, 2006, Relator Christopher Crennen filed a sealed FCA claim against several of the defendants named here—Dell, Emtec, Force 3, Unistar–Sparco, and PC Mall Gov—alleging that defendants sold computer equipment to the Government through the GSA Advantage! website that were made in non-designated countries such as China, India, Indonesia, Malaysia, Taiwan, and Thailand. *United States ex rel. Crennen v. Dell Marketing, L.P., et al. (Crennen)*, Civil Action No. 06–10546–PBS (D.Mass.). (*See* Cragg Decl. Exs. 1, 6.) The court unsealed *Crennen* in May 2009. *Crennen*, Civil Action No. 06–10546–PBS (D.Mass. May 1, 2009). On

July 22, 2009, after investigating Crennen's claims for approximately three years, the Government declined to intervene in the case.[2] (Cragg Decl. Exs. 2–5.) Crennen filed an amended complaint on September 18, 2009, which did not include PC Mall Gov as a defendant. (*Id.* Ex. 6.) Crennen later voluntarily dismissed Dell from the case. *Crennen*, Civil Action No. 06–10546–PBS (D.Mass. Jan. 22, 2010), ECF No. 166. The court ultimately dismissed Crennen's claim for failure to plead the alleged FCA violations with sufficient particularity. *Crennen*, 711 F.Supp.2d 157 (D.Mass.2010).

On April 20, 2007, while *Crennen* was still under seal, Relator Brady Folliard filed an FCA claim against some of the defendants named in this case (and *Crennen*); specifically, Government Acquisitions, Emtec, Force 3, and Insight Public Sector. *United States ex rel. Folliard (Folliard I)*, 798 F.Supp.2d 66 (D.D.C. 2011); (*see also* Cragg Decl. Exs. 7–8). Like Crennen, Folliard alleged that the defendants sold the Government computer products that were made in non-designated countries like China. (Cragg Decl. Ex. 7.) Folliard filed an amended complaint on March 24, 2008, and a second amended complaint on October 13, 2010. (*Id.* Ex. 8); *Folliard I*, No. 07–cv–719 (RCL)(D.D.C. Oct. 13, 2010), ECF No. 37. On March 24, 2008, the court granted Folliard's request to voluntarily dismiss Insight Public Sector from the case. *Id.*, ECF No. 33. The Government declined to intervene on May 27, 2010. *Id.*, ECF No. 31. The court unsealed the case on June 17, 2010. *Id.*, ECF No. 32.

The court subsequently dismissed Emtec, Force 3, and others not named in this

---

2. The Government informed the court that it did not have enough time to thoroughly investigate the claims and declined to intervene with the caveat that it might seek to intervene

at a later time. *Crennen*, Civil Action No. 06–10546–PBS (D.Mass. July 22, 2009), ECF No. 22.

suit under the first-to-file bar, concluding that Folliard's complaint was based on the "same material elements of the complaint brought by Crennen." *Folliard I*, 798 F.Supp.2d 66, 77 (D.D.C.2011). Government Acquisitions, which was not named in *Crennen*, remains a defendant in *Folliard I*. The court rejected Government Acquisitions' argument that the FCA violations were not pled with the particularity required by Rule 9(b). *Id.* at 78–81.

Folliard also filed another similar case alleging that World Wide Technology, a Defendant here, violated the FCA by selling Cisco products to the Government that were made in non-designated countries ("*Folliard II*"). (Cragg Decl. Ex. 10.) Folliard voluntarily dismissed that case before the court lifted the seal.

## DISCUSSION

The FCA imposes liability on persons responsible for the Government paying false or fraudulent claims. Private persons such as Sandager may bring an FCA action and maintain it even where, as here, the Government elects not to proceed with the action. 31 U.S.C. § 3730(b)(1) and (b)(4)(B). Sandager brings two claims under the FCA. The first count is based on the theory that Defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1). The second count is based on the theory that Defendants "knowingly [made], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(2).

## A. Improper Venue

The Court must first determine the threshold issue of whether this is the proper venue for Sandager's lawsuit. The following Defendants argue that venue is improper in this District: Promark, ImmixTechnology, Emtech, Vion, Government Acquisitions, Lyme, Insight, Red River, MA Federal, Marzik, World Wide Technology, PC Specialists, and PC Mall Gov.

The broad FCA venue statute provides as follows: "Any action under section 3730 may be brought in any judicial district in which ... in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Thus, just one Defendant must transact business in Minnesota in order for venue to be proper. Defendants have the burden of establishing that this standard is not met. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir.1947); *Safco Prods., Inc. v. WelCom Prods., Inc.*, 730 F.Supp.2d 959, 963 (D.Minn.2010) (Tunheim, J.). The parties do not disagree that Dell transacts business in Minnesota, and certainly others among them do as well.[3] Because of this undisputed fact, the plain language of the venue statute is met.

Defendants argue, however, that the FCA's broad venue language only applies where the defendants are engaged in a shared scheme to defraud, *i.e.*, they are co-conspirators. This interpretation is contrary to the plain language of § 3732(a), which does not require, explicitly or implicitly, that the defendants must be engaged in a conspiracy to defraud.

Defendants also argue that they are improperly joined under Rule 20 because Sandager does not allege a "series of transactions or occurrences" common to each Defendant. (Defs.' Dell, et al. Supp. Mem. at 32 (Docket No. 158).) Under Rule 20(a)(2), persons may be joined as

---

**3.** Dell, PC Mall Gov, Insight Public Sector, and Vion are all registered to do business in Minnesota. (Pl.'s Mem. at 40, n. 19 (citing http://mblsportal.sos.state.mn.us).)

defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." As Sandager notes, Rule 20 has been construed "very broad[ly]" to "permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974). "Absolute identity of all events in unnecessary." *Id.* Here, the claims asserted and the facts alleged are reasonably related. Venue is proper in this District.

## B. First–to–File Bar

The following Defendants argue that they cannot be sued in this case because they have already been subject to previous qui tam actions alleging essentially the same conduct: Dell, Government Acquisitions, Insight, PC Mall Gov, World Wide Technology, Unistar–Sparco, Force 3, A & T, and Emtech. As noted, each of the above Defendants was named as a defendant in *Crennen, Folliard I,* and/or *Folliard II.* The court in *Folliard I* dismissed Emtec and Force 3 under the first-to-file bar given their inclusion in *Crennen.*

The FCA contains a jurisdictional bar against the filing of a subsequent actions based on the same underlying facts as an earlier-filed action:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5). The Eighth Circuit has not addressed the first-to-file bar, but there is ample guidance from other circuits on this issue.

■ "The first-to-file bar furthers the policy of the FCA in that '[t]he first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims.'" *United States ex rel. Her v. Regions Fin. Corp.*, Civil Nos. 07–2017, 06–2178, 06–2153, 2008 WL 5381321, at *2 (W.D.Ark. Dec. 22, 2008) (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir.2001)). The first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts. *See United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir.2004) (explaining that such a limitation would be contrary to the plain meaning of the statute, which speaks of related qui tam actions, not identical ones). Once the Government is put on notice of its potential fraud claim, the purpose behind allowing qui tam litigation is satisfied. *Id.*

### 1. Same Wrongdoing

The first question presented is whether Sandager's allegations are "based on the facts underlying" the previously filed actions. 31 U.S.C. § 3730(b)(5). The majority of courts interpret § 3730(b)(5) to bar a later allegation which states all the "essential facts of a previously-filed claim, ... even if the later claim incorporates somewhat different details." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232–33 (3d Cir.1998); *see also In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 962 (10th Cir.2009) ("In determining whether a qui tam action is a 'related action based on the facts underlying the pending action,' we have adopted an 'essential claim' or 'same material elements standard.'"); *Lujan*, 243 F.3d at 1187 (applying "essential facts" standard); *United States ex rel. Hampton v. Columbia/HCA*

*Healthcare Corp.*, 318 F.3d 214, 218–19 (D.C.Cir.2003) (same); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 377–78 (5th Cir.2009) (same); *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 32–34 (1st Cir.2009) (same); *United States ex rel. Chovanec v. Apria Healthcare Grp.*, 606 F.3d 361, 363–64 (7th Cir.2010) (same).

Sandager does not disagree with this construction, but urges the Court not to adopt what he argues is a more liberal approach taken by the District Court for the District of Columbia, which compares complaints at a "high level of generality." *Folliard I*, 798 F.Supp.2d at 72 (citing *Hampton*, 318 F.3d at 219). This articulation of the standard does not advocate a lax analysis, but rather simply acknowledges that "permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing." *United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8, 12 (D.D.C.2003). Thus, to "fall under the first-to-file bar ... an action need not mirror every fact in the pending claim." *In re Natural Gas Royalties*, 566 F.3d at 962.

### a. The *Crennen* Complaint

■ Crennen alleged that Dell, Emtec, Force 3, Unistar–Sparco, and PC Mall Gov, violated the FCA by selling computer products, including but not limited to computers, "computer peripherals and accessories," such as mice, keyboards, and monitors, and other electronic equipment through GSA Advantage! that were made in non-designated countries.[4] (Cragg Decl. Exs. 1, 6.) According to the Defendants named in *Crennen*, Crennen's allegations of fraud are essentially the same as those raised by Sandager here, *i.e.*, a

violation of the TAA (and thus the FCA) by selling computer equipment manufactured in non-designated countries through GSA Advantage!. These Defendants contend that even though the computer equipment identified by Sandager differs from the equipment involved in *Crennen* this distinction is immaterial because the fraudulent scheme alleged is the same; the difference in products merely serve as different examples of the fraud. Defendants argue that such a specific degree of sameness is not necessary under the "essential facts" standard.

In response, Sandager argues that the fact that different products are involved renders the first-to-file bar inapplicable. Sandager cites first to *Duxbury*, 579 F.3d at 33, for this proposition. In *Duxbury*, however, the First Circuit declined to bar a second filed qui tam action because the two relators alleged different types of fraud associated with the same drug, Procrit. *Id.* Thus, *Duxbury* clearly does not support the argument that different products will defeat the first-to-file bar.

Sandager also relies on *In re Pharm. Indus. Average Wholesale Price Litig. (In re Pharm.)*, AMDL No. 1456, 2008 WL 2778808, *3 (D.Mass. July 15, 2008). *In re Pharm.* did involve different products, but the court's decision turned, not on that fact, but on the fact that the drugs were marketed by different divisions within the defendant corporation and involved a different type of scheme:

> The complaint in the Florida Case involved different drugs marketed by a different division of Abbott. Significantly, Erythromycin is primarily a self-administered drug and the other drugs are generally administered by physicians. Notice of fraud in one drug's pricing is not notice of fraud in another drug's pricing, as Abbott well knows. This is

---

4. Crennen subsequently voluntarily dismissed Dell and PC Mall Gov.

because drugs are often marketed, reimbursed, sold, and priced in different ways.

*Id.; see also Ortega,* 240 F.Supp.2d at 16 ("Both Thompson and King, then alleged kickback behavior similar to that alleged by Relator, that various benefits were provided to doctors in exchange for referrals. While the list of benefits might vary slightly, the scheme is the same."). The *Pharm.* case therefore does not counsel the Court to find the distinctions in products to be dispositive.

Ultimately, the question is whether the Government has sufficient notice of the fraudulent scheme through the first-filed complaint. *Grynberg,* 390 F.3d at 1279; *Folliard I,* 798 F.Supp.2d at 73 ("Crennen's allegations pertaining to HP products gave the government sufficient notice to discover the allegedly fraudulent Cisco products."). The Court is satisfied that the Government's investigation, of the allegations in the *Crennen* complaint would have revealed the facts underlying the fraudulent scheme alleged here.

### b. The *Folliard I* Complaint

Like Crennen, Folliard also alleged FCA violations due to the sale of computer equipment made in non-designated countries on GSA Advantage!. (Cragg Decl. Exs. 7, 8.) Folliard specifically identified several allegedly offending products, none of which were identified as HDDs or storage devices. (*Id.* Ex. 7 ¶ 36, Ex. 8 ¶ 33.) Sandager again argues that because the products involved are distinct, the complaints are not sufficiently similar to implicate the first-to-file bar. The Court has reviewed the operative complaint in *Folliard I* and, for the reasons stated above, the Court is satisfied that the product distinction is immaterial because the fraudulent scheme alleged is in material respects the same as the scheme alleged in that case.

### c. The *Folliard II* Complaint

*Folliard II* likewise involved the same basic fraud alleged fraud, but included only World Wide Technology as a defendant and involved a myriad of computer components such as adapters, "interface cards," and modules. (Cragg Decl. Ex. 10 ¶ 21.) Sandager argues that *Folliard II* is materially distinct not only because of the differences in the products, but because it did not involve the sale of products through GSA Advantage!. But the *Folliard II* complaint does reference GSA Advantage! and at least implicitly alleges that the products were sold on that website. (*See id.* ¶ 18 ("Folliard *also sells* products through the GSA Advantage! Website") (emphasis added).) Again, the distinctions do not warrant a determination that the *Folliard II* complaint is sufficiently different from Sandager's Amended Complaint to render the first-to-file bar inapplicable.

### 2. Meaning of "Pending Action"

The next issue is whether the previously filed suits are "pending" within the meaning of the FCA. *See* 31 U.S.C. § 3730(b)(5) ("When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."). At this point, only *Folliard I* is still pending against Government Acquisition, but as to no other Defendant. The court dismissed *Crennen* in 2010 and Folliard voluntarily dismissed *Folliard II* at some unknown time after 2008. The three previously filed actions, however, were pending at the time Sandager filed his original Complaint, which is the operative complaint for purposes of analyzing this issue. *See Chovanec,* 606 F.3d at 362 ("One 'brings' an action by commencing suit."). Sandager argues that § 3730(b)(5) does not apply (except as to Government Acquisition) because *Crennen,*

*Folliard I,* and *Folliard II* are no longer pending. The Seventh Circuit rejected this very argument, aptly noting that such a construction of § 3730(b)(5) would ignore its plain language and promote, rather than deter, the filing of parasitic suits:

> Chovanec treats § 3730(b)(5) as if it read something like: 'While another action under this section is pending, no person other than the Government may continue to prosecute a related action....' Then § 3730(b)(5) would do nothing to block an infinite series of claims; me-too actions could proliferate, provided only that the copycat asked for a stay until the action ahead of it in the queue had been resolved. That's not at all what the actual statute says, however. It provides that if one person 'brings an action' then no one other than the Government may 'bring a related action' while the first is 'pending.'

*Id.*[5] In *Lujan,* the Ninth Circuit likewise held that the requirement that an action be "pending" is met when the later action is brought while the first-filed action is pending, regardless of whether the first-filed action is resolved during the pendency of the later action. 243 F.3d at 1188. *Crennen, Folliard I* and *Folliard II* were therefore "pending" at the time Sandager filed his suit.[6]

■ Sandager also argues that the first-to-file bar does not apply because he filed his action while *Crennen, Folliard I,* and *Folliard II* were under seal. Whether Sandager knew about the previous actions prior to filing suit does not factor into the Court's analysis, however:

> The Court is not swayed by the plaintiff's point that his is not a parasitic or opportunistic lawsuit because the [earlier suit] was under seal when he filed his initial complaint. Although the 'first-to-file' rule aims to prevent opportunistic filing, that is not its only aim. By awarding the spoils to the first-filer, the rule also aims to encourage the prompt reporting of fraud. Furthermore, ... once the government is made sufficiently aware of the alleged fraud so that it can pursue its own investigation into the matter, little is gained by subsequent, duplicative claims from less-vigilant whistle-blowers.

*United States ex rel. Batiste v. SLM Corp.,* 740 F.Supp.2d 98, 104–05 n. 3 (D.D.C. 2010), *aff'd,* 659 F.3d 1204 (D.C.Cir.2011) (internal citation omitted). The inquiry is whether the lawsuits are essentially the same, not whether the relator knew about the prior suit at the time he filed suit. In any event, Sandager filed his Amended Complaint well after *Crennen* and *Folliard I* were unsealed, so Sandager at least had constructive knowledge of the previous suits before he finalized his allegations and claims.

---

**5.** In *Chovanec,* the court of appeals held that the district court's dismissal of the action with prejudice was in error because the first-filed cases were settled during the pendency of the *Chovanec* action. 606 F.3d at 365 ("§ 3730(b)(5) only applies when the initial action is pending."). The court determined that Chovanec should be allowed to re-file her case given the resolution of the earlier cases. *Id.* In making this ruling, however, the court specifically commented that because of the resolution of the prior cases, Chovanec's subsequent complaint may well be precluded by the Public Disclosure Bar or the doctrines of

issue or claim preclusion. *Id.* Here, although the first-filed cases have, for the most part, concluded, the Court dismisses the case with prejudice due to the futility of amendment as discussed below.

**6.** Insight Public Sector was not included as a defendant in Folliard's amended complaint which was filed on March 24, 2008, four months before Sandager filed suit. *Folliard I* was therefore not "pending" against Insight Public Sector and the first-to-file bar does not shield Insight Public Sector from this suit.

### 3. Effect of Rule 9(b) Dismissal of *Crennen*

Sandager argues that the first-to-file bar does not apply to Dell, A & T, Force 3, PC Mall Gov, Unistar–Sparco, and Emtec because the *Crennen* complaint was legally deficient, *i.e.*, it was dismissed under Rule 9(b). Sandager relies on *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005), for this argument. In *Walburn*, the Sixth Circuit concluded that the first-to-file bar did not apply because the first-filed complaint was so vague and "broadly worded" that it "failed to adequately alert the government to possible fraud." *Id.* at 972, 973. *Walburn* has been criticized and distinguished, most notably by the District of Columbia Circuit in *Batiste:*

> We are unconvinced [by *Walburn*]. Nothing in the language of Section 3730(b)(5) incorporates the particularity requirement of Rule 9(b), which militates against reading such a requirement into the statute. The statutory text imposes a bar on complaints related to earlier-filed, pending actions. The command is simple: as long as a first-filed complaint remains pending, no related complaint may be filed.

659 F.3d at 1210; *see also United States ex rel. Wickliffe v. EMC Corp.*, 473 Fed. Appx. 849, 850–51, 2012 WL 1111242, at *1 (10th Cir.2012) (expressing unease with *Walburn* ); *Folliard I*, 798 F.Supp.2d at 74 (agreeing with *Batiste* and dismissing the complaint under the first-to-file bar even though *Crennen* was dismissed under Rule 9(b)).

■ Even if the Court were to adopt its reasoning, *Walburn* is distinguishable because although the *Crennen* complaint failed to meet the requirements of Rule 9(b), it was not so vague as to fail to apprise the Government of the fraudulent scheme. Rather, *Crennen* was deficient because it failed to allege the requisite elements of an FCA violation, most notably, the actual sale of non-conforming products. 711 F.Supp.2d at 162. The ultimate question is whether the Government had a basis on which to investigate the fraudulent scheme. That standard may be met even if the first-filed complaint is technically deficient.

Sandager also relies on *Campbell v. Redding Med. Center*, 421 F.3d 817, 824–25 (9th Cir.2005), in which the court rejected application of the first-to-file bar because the first claim was dismissed under the public disclosure bar. None of the prior cases relevant to this case were dismissed under the public disclosure bar and *Campbell* is thus inapposite.

The fact that *Crennen* voluntarily dismissed Dell and PC Mall Gov, and that Folliard dismissed Insight Public Sector and World Wide Technology, likewise does not render the first-to-file bar inapplicable, and Sandager does not argue that point. The Court concludes that neither the Rule 9(b) dismissal of *Crennen* nor the voluntary dismissals in all of the foregoing cases foreclose application of the first-to-file bar.

In sum, the first-to-file bar applies and precludes Sandager from pursuing his claims against Dell, Government Acquisitions, PC Mall Gov, World Wide Technology, Unistar–Sparco, Force 3, A & T, and Emtech.

### C. Rule 9(b)

■ Even if the first-to-file bar did not apply, Sandager's claims must be dismissed because he has failed to adequately allege that any Defendant has violated the FCA. All of the Defendants have moved for dismissal under Federal Rule of Civil Procedure 9(b), arguing that Sandager has not and cannot allege the fraudulent scheme with the requisite level of particularity. The parties agree that Sandager's FCA claims must satisfy Rule 9(b), which requires that "all averments of fraud or

mistake ... shall be stated with particularity." *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir.2006) ("Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)"). In resolving a Rule 9(b) motion in an FCA matter, allegations should be taken as true and all reasonable inferences drawn in the relator's favor. *Id.* However, dismissal is required when a complaint lacks particularity as to the who, what, where, when, and how of the alleged fraud. *Id.*

■ Defendants contend that the Amended Complaint lacks particularity in many ways, most notably the details surrounding alleged sales—or more accurately presumed sales—to the Government. For example, Defendants complain that Sandager has failed to include details such as the name of the employee involved in the sale, the precise Government purchasing agency, the exact purchase order, the price of the goods sold, and the amount the Government paid for the goods. (*See, e.g.,* Def. Force 3, Inc.'s Mem. at 18.) More fundamentally, Defendants point out that Sandager does not specifically allege that any sales of non-conforming products occurred. Sandager has set out representative examples of the alleged fraud for each Defendant, but in no instance does he provide any details as to when and, more importantly, *if* the Defendant actually sold non-conforming products to the Government. For example, as to Emtec, Sandager alleges as follows:

> At various times since July 31, 2002, specifically including, but not limited to, in August 2007 and March 2009, Emtec Federal, Inc. *has sold on the GSA Advantage! website* as part of its Schedule 70 Contract part number A7962A, a storage array HDD. It is manufactured in China, which is not a designated country, and it was not substantially trans-

formed in the U.S. or a designated country.

(Am. Compl. ¶ 55 (emphasis added).) The allegations as to each Defendant are similarly lacking assertions regarding an actual sale.

As the Eighth Circuit recently recognized, "[t]he FCA is not concerned with regulatory noncompliance." *United States of America ex rel. Vigil v. Nelnet Inc.*, 639 F.3d 791, 795 (8th Cir.2011). "Rather, it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." *Id.* at 795–96. The FCA imposes liability on a defendant who "(1) 'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes ... a false record or statement to get a false or fraudulent claim paid or approved.'" *Id.* at 796 (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir.2009) and 31 U.S.C. § 3729(a)(1)-(2)).

A "claim" under the FCA is defined as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that ... is presented to an officer, employee, or agent of the United States[.]" 31 U.S.C. § 3729(b)(2)(A)(i). In light of this definition, Sandager's Amended Complaint, and ultimately the merits of his claims under both § 3729(a)(1) and (2), depend on Sandager's ability to plead and prove that each Defendant requested payment from the Government for non-conforming products sold on GSA Advantage!. In other words, Sandager must be able to plead and prove sales of offending products to the Government. Sandager acknowledges that he has not alleged any facts underly-

ing actual sales to the Government. Sandager admits that he is only able to allege that certain allegedly nonconforming products were offered for sale on GSA Advantage! and he argues that because those products were offered for sale, the Government must have purchased some of them. At the motion hearing, counsel for Sandager argued that the "logical conclusion" is that actual sales occurred and that it is a "plausible inference" that such sales occurred.

Sandager acknowledges that he does not know all of the details relating to the fraud alleged. (Am. Compl. ¶ 69.) Although the Court is mindful that as a practical matter the specific details of the alleged fraud are known only to Defendants, Sandager does not and cannot allege that any sale occurred. Sandager therefore has not alleged that any Defendant has ever made a fraudulent "claim" for payment to the Government. The fact that Defendants may be privy to the details underlying this case does not excuse Sandager from pleading the crucial elements of his claims.

Sandager is correct that the Eighth Circuit has held that where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. *Joshi*, 441 F.3d at 557. The plaintiff must allege, however, representative examples of the fraudulent conduct with particularity. *Id.; see also Goughnour v. REM Minn., Inc.*, No. 06–1601, 2007 WL 4179354, at *3–4 (D.Minn. Nov. 20, 2007) (Magnuson, J.) (dismissing FCA claim because plaintiff failed to allege any examples of how the allegedly fraudulent budgets caused the Government to pay a false claim). The Eighth Circuit expressly rejected the theory that the particularity requirement of Rule 9(b) should be relaxed in an FCA qui tam action when the details of the fraud are uniquely known the defendant. *Joshi*, 441 F.3d at 559. "Without sufficient allegations of materially false claims, an FCA complaint fails to state a claim on which relief may be granted." *Vigil* 639 F.3d at 796.

There is abundant caselaw in support of the Court's conclusion that Sandager's failure to allege—and acknowledged inability to allege—actual sales is fatal to his claims. *See, e.g., Joshi*, 441 F.3d at 557 (affirming dismissal of FCA claim because relator's conclusory allegations unsupported details were insufficient to provide the necessary indicia of reliability); *Vigil*, 639 F.3d at 802 (affirming dismissal of FCA claim because the complaint did not identify any actual claims submitted to the government, but instead alleged generally that fraudulent marketing practices must have resulted in the submission of claims); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir.2005) (affirming dismissal of FCA claim because "[u]nderlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government"); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir.2006) (affirming dismissal of FCA claim because the relator failed to identify any claims submitted by the defendant); *United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220, 232 (1st Cir.2004) (affirming dismissal under Rule 9(b) and noting that "allowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a qui tam action and its protections for the government (which is, of course, the real party in interest in a qui tam action)."); *United States ex rel. Roop v. Hypoguard USA, Inc.*, No. 07–1600, 2007 WL 2791115, at *2 (D.Minn. Sept. 24, 2007) (Montgomery, J.), *aff'd*, 559 F.3d 818 (8th Cir.2009) (dismissing FCA

claim under Rule 9(b) because the plaintiff failed to allege any instance of a sale that led to a claim).

The cases cited by Sandager, ostensibly to the contrary, are distinguishable. For example, in *United States ex rel. Johnson v. Golden Gate Nat'l Senior Care, LLC*, No. 08–1194, 2012 WL 465676, at *4–5 (D.Minn. Feb. 13, 2012), Judge Frank declined to dismiss the relator's FCA claim because the complaint alleged 41 specific instances of false billing submitted to Medicare or Medicaid. Here, again, Sandager does not allege even one instance of any Defendant submitting a claim, false or otherwise, to the Government.

In *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 192 (5th Cir.2009), the court of appeals determined that the relator adequately pled an FCA claim even though specific examples of actual claims were not alleged, because the nature of the fraud and the high level of detail included in the complaint supported the conclusion that such claims must have been submitted:

> [T]he complaint's list of dates that specified, unprovided services were recorded amounts to more than probable, nigh likely, circumstantial evidence that the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government. It would stretch the imagination to infer the inverse; that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed. That fraudulent bills were presented to the Government is the logical conclusion of the particular allegations in Grubbs' com-

plaint even though it does not include exact billing numbers or amounts.

Even if *Grubbs* reflected the standard in this Circuit, it is materially distinguishable from this case.

██ Sandager does not allege facts that compel the conclusion that Defendants submitted false claims to the Government. Rather, at most the Amended Complaint alleges a scheme to offer to sell non-conforming goods to the Government. As noted, an offer for sale is not a "claim" within the meaning of the FCA. Moreover, Sandager has cited to publicly available facts that undermine his claim. Sandager submits that GSA Advantage! offers more than 11 million different products for sale to the Government and that yearly sales on the website exceed $40 billion. (Pl's Mem. at 23.) Sandager further states that Dell, PC Mall Gov, A & T, Unistar–Sparco, Insight Public Sector, Government Acquisitions, World Wide Technology, Emtec, and Force 3 collectively offer more than 380,000 products for sale on the website. (*Id.*) The incredible breadth of the website's offerings belies Sandager's insistence that sales of Defendants' HDDs and storage devices must have occurred. Indeed, it is quite possible that Defendants could offer non-conforming products on GSA Advantage! that have never been purchased. There is simply no reliable indicia of any sale to the Government by any Defendant.

As the Eighth Circuit has stated, "[t]he [FCA] is intended to encourage individuals who are either close observers or involved in the fraudulent activity to come forward, and is not intended to create windfalls for people with secondhand knowledge of the wrongdoing." *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003). Sandager's inability to allege any actual sales indicates that his knowledge is in fact "secondhand." Again, nothing requires Sandager to "state every factual

detail concerning every alleged fraudulent claim[,]" but he does need to plead at least one representative example of an actual false claim. *Joshi*, 441 F.3d 552. His failure to do so is fatal to his claim.

### D. Request for Leave to Amend

Sandager requests that if the Court grants Defendants' Rule 9(b) Motions, he be given 30 days to seek leave to amend. (Pl's Mem. at 55, n. 24.) Sandager would presumably use the requested time to attempt to find additional facts to support the indicia of the requisite sales. This case has been pending since 2008 and Sandager has already had the opportunity to amend his Complaint. The Court is not satisfied that Sandager will be able to remedy the fundamental flaws by re-pleading. Sandager acknowledged at the motion hearing that he could not provide allegations relating to actual sales, and the Court has been presented with no concrete indication that Sandager has or will be able to discover additional facts to support the reliable indicia of necessary sales. If Sandager knew such facts, he would have presented them to this Court already. The Court is comfortable concluding that any attempt to re-plead would be futile. *See Joshi*, 441 F.3d at 557–58 ("denial of leave to amend may be justified by . . . futility of the amendment.").

Furthermore, to the extent Sandager intends to engage in discovery within the requested 30–day window in order to uncover necessary facts, such action would be impractical given the 30–day deadline applicable to most discovery requests and, more importantly, would contradict the FCA's purpose and procedure. The Eighth Circuit has concluded that permitting a qui tam relator to file another complaint after conducting additional discovery "would mean that the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action." *Id.* at 560 (citation omitted). "Such an approach is inconsistent with the relator's procedural obligations under the FCA and with the FCA's protections for the government, the real party in interest in a qui tam action." *Id.*; *see also Roop*, 2007 WL 2791115, at *3 (denying FCA relator's request to conduct additional discovery before filing amended complaint).

In sum, granting Sandager leave to file a Second Amended Complaint, after additional discovery or otherwise, would be futile and run counter to the FCA statutory scheme. Accordingly, Sandager's request is denied, and the Amended Complaint is dismissed with prejudice.[7]

### CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendants' Motions to Dismiss (Docket Nos. 116, 122, 128, 134, 139, 156, 161, 164, and 191) are **GRANTED;** and

2. Plaintiff's Amended Complaint (Docket No. 29) is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

7. Defendants also make other arguments in support of dismissal, such as the application of the Public Disclosure Bar and the failure to plead scienter and materiality with sufficient particularity. Because the Court has concluded that this case cannot proceed due to the infirmities discussed above, it need not address those arguments.