In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2016

UNITED STATES OF AMERICA ex rel. Jeffrey E. Main,

*Plaintiff-Appellant,*

*v.*

OAKLAND CITY UNIVERSITY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:03-cv-71 RLY-WGH—**Richard L. Young**, *Judge.*

ARGUED SEPTEMBER 12, 2005—DECIDED OCTOBER 20, 2005

Before COFFEY, EASTERBROOK, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Many federal subsidies under the Higher Education Act require multiple layers of paperwork. First the college or university submits an application to establish the institution's eligibility. If this application, which we call phase one, is granted, the institution and its students submit additional ("phase two") applications for specific grants, loans, or scholarships. Both a statute, 20 U.S.C. §1094, and a regulation, 34 C.F.R. §668.14(b)(22)(i), condition institutional eligibility on a commitment to refrain from paying recruiters contingent fees for enrolling students. The concern is that recruiters

paid by the head are tempted to sign up poorly qualified students who will derive little benefit from the subsidy and may be unable or unwilling to repay federally guaranteed loans. Oakland City University assured the Department of Education on its phase-one application that it complies with the rule against contingent fees.

Jeffrey Main, the relator in this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33, contends that the University's representation was fraudulent. According to the complaint, Main himself received contingent fees as a recruiter and later as the University's Director of Admissions. Initially Main thought the compensation system proper, but when he learned of the federal statute and rule he filed this suit. The district court dismissed it on the pleadings, see Fed. R. Civ. P. 12(b)(6), ruling that even wilful falsehoods in phase-one applications do not violate the Act, because the phase-one application requests a declaration of eligibility rather than an immediate payment from the Treasury. The phase-two applications for grants, loans, and scholarships are covered by the Act, the judge ruled, but are not false, because they do not repeat the assurance that the University abides by the rule against paying contingent fees to recruiters.

Given the posture of the litigation, we must assume (as the complaint alleges) that the University (a) knew of the prohibition against paying contingent fees to recruiters, and (b) lied to the Department of Education in order to obtain a certification of eligibility that it could not have obtained had it revealed the truth. These facts imply that the phase-two applications would not have been granted had the truth been told earlier, for all disbursements depended on the phase-one finding that the University was an eligible institution.

Although no published appellate decision to date has addressed the question whether a multi-stage process forecloses liability for fraud in the first stage, the answer is

straightforward. The False Claims Act covers anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government". 31 U.S.C. §3729(a)(2). The University "uses" its phase-one application (and the resulting certification of eligibility) when it makes (or "causes" a student to make or use) a phase-two application for payment. No more is required under the statute. The phase-two application is itself false because it represents that the student is enrolled in an eligible institution, which isn't true. (Likely the student does not know this, however, so the phase-two application is not fraudulent.) The statute requires a causal rather than a temporal connection between fraud and payment. See generally *United States ex rel. Lamers v. Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork.

The University protests that this approach would treat any violation of federal regulations in a funding program as actionable fraud, but that's wrong. A university that accepts federal funds that are contingent on following a regulation, which it then violates, has broken a contract. See *Gonzaga University v. Doe*, 536 U.S. 273 (2002). But fraud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do. Tripping up on a regulatory complexity does not entail a knowingly false representation.

To prevail in this suit Main must establish that the University not only knew, when it signed the phase-one application, that contingent fees to recruiters are forbidden, but also planned to continue paying those fees while keeping the Department of Education in the dark. This distinction is commonplace in private law: failure to honor one's promise is (just) breach of contract, but making

a promise that one *intends* not to keep is fraud. See, e.g., *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999); *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). So if, as a district judge supposed in *United States ex rel. Graves v. ITT Educational Services*, 284 F. Supp. 2d 487 (S.D. Tex. 2003), educational institutions do not certify to the Department of Education at the phase-one stage that they know about and comply with the rule against paying capitation fees for recruiting students, then the University will win this suit whether or not it has violated that rule. But if the University knew about the rule and told the Department that it would comply, while planning to do otherwise, it is exposed to penalties under the False Claims Act.

Oakland City University relies heavily on a memorandum that the Deputy Secretary of Education circulated to subordinates in 2002. Such a memorandum has no legal effect; it was not published for notice and comment and does not authoritatively construe any regulation. The Department of Justice, though it elected not to take over the litigation, see 31 U.S.C. §3730(b)(2), has filed a brief as *amicus curiae* in this court contending that the allegations of the complaint, if true, demonstrate a right to recover under the False Claims Act. That view, and not one implied by a back-office memo, represents the position of the United States. Not that the memo offers the University much assistance even on its own terms. It states that a violation of the rule against incentive compensation usually does not lead to financial loss to the United States—for any given student may well have enrolled, and been eligible, anyway. The University argues from this that a fraudulent certification does not violate the False Claims Act. That's a non-sequitur. The statute provides for penalties even if (indeed, *especially* if) actual loss is hard to quantify, and at the margin contingent payments will lead to *some* unwarranted enrollments (and thus some unjustified federal disbursements). That is, after all, why contingent payments

are forbidden.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*