# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1784

_____

| | | |
|---|---|---|
| United States of America ex rel. | * | |
| Rudy Vigil, | * | |
| | * | |
| Plaintiff Relator - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Nelnet, Inc.; JP Morgan Chase & Co.; | * | |
| Citigroup, Inc., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: December 14, 2010
Filed: May 5, 2011

_____

Before LOKEN, ARNOLD, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

The Federal Family Education Loan Program ("FFELP"), established under Part B of the Higher Education Act of 1965, 20 U.S.C. § 1071 *et seq.*, consists of four programs administered by the U.S. Department of Education (DOEd) to provide various types of financial assistance that are paid to private lenders whose loans enable students to afford higher education -- the Stafford Loan Program, the Supplemental Loans for Students Program, the PLUS Loan Program, and the Consolidation Loan Program. See 34 C.F.R. Pt. 682. Nelnet, Inc., JPMorgan Chase & Co., and Citigroup Inc. are private Lenders participating in these programs. In this

*qui-tam* action, Rudy Vigil, a former Nelnet loan advisor, alleges that certain Nelnet marketing practices were continuing violations of the FFELP statutes and regulations that render Nelnet liable under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a), for three times the amounts paid on all claims submitted by Nelnet over a five-year period for interest rate subsidies, special allowances, and reimbursement of loan defaults. Vigil joined Chase and Citigroup as defendants, alleging they were knowing participants in a conspiracy to submit false claims. Vigil appeals the district court's[1] dismissal of his third amended complaint (the "Complaint") for failure to plead fraud with sufficient particularity and for failure to state a claim. See Fed. R. Civ. P. (9)(b), 12(b)(6). Reviewing the district court's grant of defendants' motion to dismiss *de novo*, and drawing all reasonable factual inferences in favor of Vigil, the nonmoving party, we affirm. See United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 555 (8th Cir.) (standard of review), cert. denied, 549 U.S. 881 (2006).

## I.

Under the FFELP, DOEd pays claims submitted by eligible private lenders for interest-rate subsidies and special allowances granted on behalf of student borrowers. See 20 U.S.C. §§ 1078(a)(1), 1087-1; 34 C.F.R. § 682.300, .302.[2] DOEd also reduces private lenders' risk of loan defaults by entering into guaranty agreements with Guaranty Agencies who, in turn, insure Lenders against their potential default losses on student loans. See 20 U.S.C. §§ 1078(b)-(c), 1080; 34 C.F.R. § 682.100(b)(1). Nelnet participates in the FFELP both as a Lender and a Servicer of student loans. As Servicer for other lenders, including Chase and Citigroup, Nelnet performs collection

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]Except where otherwise noted, all citations are to the FFELP statutes and regulations in effect when Vigil filed the Complaint, May 19, 2008.

services and presents claims to DOEd and Guaranty Agencies for interest subsidies, special allowances, and insurance payments on defaulted loans.

The practices of private Lenders and Servicers are heavily regulated, and their participation in the FFELP is conditioned on compliance with detailed DOEd regulations. See, e.g., 20 U.S.C. § 1085(d); 34 C.F.R. §§ 682.206-.208, .406, .413, .700-.713. In the event of noncompliance with FFELP requirements, the Secretary of Education may suspend or terminate a Lender's or Servicer's right to participate in the program, and may require the repayment of interest subsidies, special allowances, and insurance payments improperly received, after notice and an administrative hearing. See 34 C.F.R. §§ 682.413(a), (e)(1)(i), .706-.707, .709(b). However, with limited exceptions, "termination proceedings by the Secretary do not affect a lender's responsibilities or rights to benefits and claim payments that are based on the lender's prior participation in the program." § 682.702(a).

One subsection of the FFELP statutes provides that the term "eligible lender" does not include any lender that the Secretary determines, after notice and opportunity for a hearing, offers improper inducements, conducts unsolicited mailings, performs functions that an educational institution must perform, or engages in fraudulent or misleading advertising for the purpose of securing student-loan applications. 20 U.S.C. § 1085(d)(5). Vigil's Complaint alleges that Nelnet violated § 1085(d)(5) and its implementing regulations (i) by offering Vigil and other loan advisors prohibited bonuses and commissions based on the number of borrowers they persuaded to complete consolidation-loan applications;[3] (ii) by providing "exit-counseling" software to universities for the purpose of "steering" prospective student borrowers

_____

[3]One FFELP program authorizes agreements whereby eligible lenders make consolidation loans that discharge an eligible student borrower's liability on the loans being consolidated. See 20 U.S.C. § 1078-3. Consolidation loans by a lender under such an agreement are eligible for interest subsidies, § 1078(a)(1)(B)(ii); special allowance payments, §§ 1087-1(b)(1), (3), & (5)(A)(ii); and insurance coverage for loan defaults, § 1078-3(a)(2).

to Nelnet; and (iii) by directing fraudulent advertising at prospective student borrowers through its exit-counseling software and website. The Complaint asserts that Nelnet, Chase, and Citigroup are jointly and severally liable to repay all interest rate subsidies, special allowances, and defaulted loan reimbursements "from at least when Vigil began working for Nelnet" in 2003 until the filing of the Complaint. The Complaint estimates that Nelnet received total payments well in excess of two billion dollars in the years 2003-2006.

## II.

The FCA is not concerned with regulatory noncompliance. Rather, it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money. The FCA's core provisions impose treble-damage liability on a defendant who "(1) 'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved.'" United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009), quoting 31 U.S.C. § 3729(a)(1)-(2).[4]

---

[4]After Vigil filed the Complaint, the FCA was renumbered and amended in response to the Supreme Court's interpretation of § 3729(a)(2) in Allison Engine Co., Inc. v. United States ex rel. Sanders, 553 U.S. 662, 665 (2008). Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a)(1), 123 Stat. 1617, 1621-22. The amendments to § 3729(a)(2) apply "to all claims under the False Claims Act . . . pending on or after" June 7, 2008. Id. § 4(f)(1). This could mean demands for money pending on that date, or claims in pending lawsuits. United States v. Hawley, 619 F.3d 886, 894 (8th Cir. 2010). Here, Vigil's Complaint was pending on June 7, 2008, but the allegedly false claims had been paid. We conclude that Vigil's claim fails under the new § 3729(a)(1)(B) as well as the old § 3729(a)(2). Therefore, as in Hawley, we decline to resolve this retroactivity issue.

Without sufficient allegations of materially false claims, an FCA complaint fails to state a claim on which relief may be granted.  See Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001) (the FCA "does not encompass those instances of regulatory noncompliance that are irrelevant to the government's disbursement decisions"); United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 886 (8th Cir.) ("[T]he falsehood in the claim must be material to the payment decision."), cert. denied, 540 U.S. 875 (2003); United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).  Because the FCA is an anti-fraud statute, the Complaint's false-claim allegations must comply with Rule 9(b) -- "a party must state with particularity the circumstances constituting fraud."  Joshi, 441 F.3d at 556.  In addition, of course, the Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).

## III.

Vigil's Complaint first attempts to link its detailed allegations of FFELP regulatory violations to its FCA claims of fraud by alleging that every Nelnet claim for interest rate subsidies, special allowances, and default reimbursements falsely represented or certified that Nelnet was an eligible FFELP Lender or Servicer, when in fact its "offering of prohibited inducements and acts of misleading consumers" made it ineligible for FFELP payments.  The district court concluded that these allegations failed to state an FCA claim as a matter of law because the statute and regulations provide that, once eligible, a Lender or Servicer retains its FFELP "eligibility" until the Secretary terminates its participation after a formal administrative proceeding.  See 20 U.S.C. § 1085(d)(5); 34 C.F.R. § 682.200(b)("Lender")(5).  "Absent an allegation that Nelnet was stripped of its status as an eligible lender," the court explained, "Nelnet's certification that it was an eligible lender was not false or fraudulent."  United States ex rel. Vigil v. Nelnet, Inc., No. 8:07-cv-266, slip op. at 12 (D. Neb. Apr. 1, 2010).  We agree with this ruling, which Vigil does not challenge on appeal (except, improperly, in his Reply Brief).

The Complaint does not allege that Nelnet submitted a fraudulent application to establish its initial eligibility as FFELP Lender and Servicer, which distinguishes this case from United States ex rel. Main v. Oakland City Univ., 426 F.3d 914, 916-17 (7th Cir. 2005), and United States ex rel. Hendow v. Univ. of Phx., 461 F.3d 1166, 1176-77 (9th Cir. 2006).

On appeal, Vigil focuses instead on his allegations that Nelnet's claims for interest subsidies, special allowances, and default reimbursements included materially false certifications of compliance with FFELP regulations that were "conditions of payment" for those claims. The Complaint does not allege that any specific claim was in fact paid or even submitted for payment. Rather, blank claim forms are attached as exhibits to the Complaint, without any context other than conclusory allegations as to what was being certified.

Claims for interest subsidies and special allowances are paid directly by DOEd. To obtain such payments, the Complaint alleges, Nelnet submitted quarterly billing statements entitled "Lender's Interest and Special Allowance Request and Report" ("LaRS"). The blank form attached to the Complaint includes a "Certification" that:

> As an eligible Lender [or] Servicer . . . I certify . . . that . . . [t]he data that my organization submits to [DOEd] is correct to the best of my knowledge and belief [and] that this submission seeks payment of only those amounts that are proper and authorized under the laws, regulations, and policies applicable to the [FFELP].

Claims for insurance payments on defaulted loans are paid (in most cases) by Guaranty Agencies with funds guaranteed by DOEd. See 20 U.S.C. §§ 1078(c), 1080; 34 C.F.R. §§ 682.403, .404. To obtain insurance payments, Lenders submit FFELP Claim Forms to the Guaranty Agencies. The blank form attached to the Complaint includes a "Certification" by the Lender to the Guaranty Agency that:

-6-

The information in this claim is true and accurate and that the loan(s) included in the claim was (were) made, disbursed . . . and serviced in compliance with all federal regulations and appropriate guarantor rules.

Counts 1 and 2 of the Complaint allege that each such Certification was a false claim or record that violated 31 U.S.C. §§ 3729(a)(1) and (2).

**A.  Count 1, the § 3729(a)(1) Claims.**  Liability for a violation of § 3729(a)(1) requires proof that a materially false or fraudulent claim was "presented" to the Government.  United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 492-97 (D.C. Cir. 2004) (Roberts, J.), cert. denied, 544 U.S. 1032 (2005).  The Complaint does not identify *even one* claim for interest subsidies or special allowances that Nelnet submitted to DOEd.  It alleges that every claim for interest subsidies and special allowances that Nelnet presented to DOEd was a false claim by reason of the LaRS Certification.[5]  But the Certification provides that the *data* submitted to DOEd is accurate and that it conforms with federal policy.  It does not include an affirmative declaration that the *Lender* or *Servicer* of the underlying loans has fully complied with all FFELP statutes and regulations.

More importantly, each Certification was specific to the loan or loans referenced in the LaRS.  The Complaint does not identify any claim submitted by Nelnet during the period in question based upon loans obtained as a result of Nelnet's alleged regulatory violations -- prohibited inducements and fraudulent marketing practices.  Nor does the Complaint allege how the false Certification was material to DOEd's decision to pay interest subsidies and special allowances on loans that were

_____

[5]By contrast, the relators in an action against a Nelnet competitor asserting similar FCA claims and represented by a common attorney limited their claims to defendant's "particular claims on consolidation loans . . . which were the subject of inducement promises and payments specifically described as violating federal statutes."  See United States ex rel. Jones v. Collegiate Funding Servs., Inc., No. 3:07-cv-290, 2011 WL 129842, at *14 (E.D. Va. Jan. 12, 2011).

*not* obtained as a result of these practices -- for example, original loans that were not affected by Nelnet's alleged prohibited inducements to consolidate, and loans to students at the many universities that did not take advantage of Nelnet's exit-counseling software. The regulations logically provide that the Secretary's determination of whether to order a Lender to repay interest subsidies and special allowances for failure to meet FFELP requirements is specific to a particular loan. See 34 C.F.R. § 682.413(a)(1)(i). Without this type of particularity, we agree with the district court that the Complaint fails to allege false claims for interest subsidies and special allowances with the particularity Rule 9(b) requires. See Costner, 317 F.3d at 888 (a complaint must identify the "who, what, where, when, and how" of the fraud "to enable the defendant to respond specifically and quickly to the potentially damaging allegations"). It also fails to plausibly allege that the alleged regulatory noncompliance rendered all claims false or fraudulent.

The Complaint is even more deficient in alleging false claims for FFELP insurance payments. It alleges that Nelnet "presented or caused to be presented false and/or fraudulent claims . . . through each and every default claim on each and every FFELP loan." But it does not allege that any false claims were presented to DOEd by the Guaranty Agencies, only that Nelnet violated § 3729(a)(1) by presenting false claims to the Guaranty Agencies. Vigil, a Nelnet "loan advisor," plausibly alleges first-hand knowledge of inducements Nelnet paid to him. But he does not allege first-hand knowledge of Nelnet's practices and procedures for submitting insurance claims to Guaranty Agencies, and the exhibits attached to the Complaint do not include blank versions of whatever documents Guaranty Agencies submit to DOEd to obtain reimbursement of their insurance payments to Lenders and Servicers. The Complaint alleges that Nelnet's Certification to a Guaranty Agency was false, but it fails to allege, or to identify any statute or regulation that required, that the Guaranty Agency "then forwarded [this false claim] to the Government." Allison Engine, 553 U.S. at 670 n.1. Thus, unlike the record on appeal in Hawley, 619 F.3d at 892, the Complaint fails to allege facts creating plausible inferences that Nelnet's allegedly false claims

for insurance payments were presented to the government and were material to its payment decisions.

Finally, we consider it significant that the FFELP statutes and regulations provide detailed remedies for noncompliant Lenders and Servicers. See 20 U.S.C. §§ 1082(g) (civil fines), 1085(d)(5) (revocation of "eligibility" status); 34 C.F.R. §§ 682.702, .705, .706. (suspending, limiting, or terminating continued participation), .709 (recovery of insurance benefits). Nowhere do the extensive regulations require that a Lender certify its compliance with FFELP's anti-inducement and false-advertising provisions, nor do they suggest that noncompliance with these regulatory requirements may result in the wholesale recovery of claims previously paid to the offending Lender on eligible student loans.[6] When the statute creates "a complex monitoring and remedial scheme that ends [FFELP] payments only as a last resort," it would "be curious to read the FCA, a statute intended to protect the government's fiscal interests, to undermine the government's own regulatory procedures." United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1222 (10th Cir. 2008). The district court properly dismissed Count 1.

**B. Count 2, the § 3729(a)(2) Claims.** Liability for a violation of § 3729(a)(2) requires proof that a materially false or fraudulent statement or record was used or caused to be used "to get a false or fraudulent claim paid or approved by the Government." Although that language has been modified, the new statute still requires

---

[6]34 C.F.R. § 682.406(d) provides that, "A guaranty agency may not make a claim payment from the Federal Fund or receive a reinsurance payment on a loan if the agency determines or is notified by the Secretary that the lender offered or provided an improper inducement as described in" 20 U.S.C. § 1085(d)(5). This confirms what common sense suggests -- that noncompliance with anti-inducement requirements intended to discourage high-risk student loans is potentially material to FFELP payment decisions. But the regulation is loan-specific. It does not suggest that a Lender's offering of improper inducements to attract some loans will retroactively forfeit all claims paid to the Lender on untainted loans.

-9-

a causal link between the "false statement or record" and the Government's payment of a false claim. If a false statement "is not made with the purpose of inducing payment of a false claim . . . . the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability." Allison Engine, 553 U.S. at 671-72. "A false certification is therefore actionable under the FCA only if it leads the government to make a payment which it would not otherwise have made." Conner, 543 F.3d at 1219. Vigil must plead and prove that Nelnet's allegedly false Certifications were conditions of payment -- "those which, if the government knew they were not being followed, might cause it to actually refuse payment." By contrast, if the regulatory violations were only conditions of FFELP participation, they "are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program." Id. at 1220.

The Complaint alleges that each and every claim submitted by Nelnet violated § 3729(a)(2) because the false Certifications were conditions of payment by DOEd and the Guaranty Agencies that Nelnet "knowingly caused to be made and used, to get false claims approved." As we have explained in discussing the § 3729(a)(1) claims, the Complaint lacks any details relating to the making, using, or submitting of any Certifications and thus fails to plead fraud with particularity. See Joshi, 441 F.3d at 556. Merely alleging *why* the Certifications were false is insufficient.

Moreover, the Complaint fails to allege with particularity, or plausibility, why these alleged regulatory violations were material to the government's decision to pay each of the various types of claims submitted under a variety of FFELP loan programs. Although Nelnet's alleged violation of FFELP regulations may have jeopardized its continued *participation* in the various loan programs, it is implausible to believe, and the Complaint does not even allege, that these past violations would have affected decisions by DOEd and the Guaranty Agencies to pay, for example, insurance benefits and guarantees on behalf of eligible student borrowers who

-10-

subsequently defaulted.[7]  Thus, as in <u>United States ex rel. Hopper v. Solvay Pharm., Inc.</u>, 588 F.3d 1318, 1330 (11th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3465 (2010), the Complaint "does not link the alleged false statements to the government's decision to pay false claims."  In these circumstances, "submission of a blank certification form, with no facts supporting an inference that it was the basis of a false claim, does not satisfy Rule 9(b) with respect to [Vigil's] § 3729(a)(2) claims."  <u>Jones</u>, 2011 WL 129842, at *17.  The district court properly dismissed Count 2.

**C. Count 4, the Claim of *Per Se* Liability**.  For part of the period encompassed by Vigil's Complaint, the Secretary was authorized to designate Lenders and Servicers for "exceptional performance" (EP) status to encourage proper collections and thereby reduce the cost of FFELP loan defaults.  A Lender became eligible for this designation if, on average, it complied with at least ninety-seven percent of the Secretary's "due diligence requirements applicable to each loan."  20 U.S.C. § 1078-9(a)(1), (2) (2006); 34 C.F.R. § 682.415(a)(2)(iii)(A) (2006).  Quarterly and annual audits measured exceptional performers' continuing compliance with the due-diligence requirements promulgated for this purpose.  20 U.S.C. § 1078-9(c)(1), (5), (7) (2006).  The due-diligence regulation incorporated by reference generally applicable FFELP regulations governing the collection of delinquent loans.  34 C.F.R. § 682.415(b)(i) (2006), incorporating by reference § 682.411(c)-(h) and (m).  The statute, repealed in 2007,[8] provided that a designated Lender or Servicer "failing to service loans or otherwise comply with applicable program regulations shall be considered in violation of section 3729 of [the FCA]."  20 U.S.C. § 1078-9(g) (2006).

---

[7]Indeed, as to consolidation loans, those affected by the prohibited inducements alleged in the Complaint, the statute expressly provides that termination of a lender's authority to make such loans does *not* affect the insurance of prior loans.  <u>See</u> 20 U.S.C. § 1078-3(b)(3)(H).

[8]Pub. L. No. 110-84, Title III, § 302(a), 121 Stat. 784, 796 (Sept. 27, 2007).

EP status entitled a Lender to recover from Guaranty Agencies ninety-nine percent, rather than ninety-seven percent, of the unpaid balance of defaulted loans. 20 U.S.C. §§ 1078(b)(1)(G)(ii), 1078-9(b)(1) (2006); 34 C.F.R. § 682.415(a)(1)(ii) (2006). The Complaint alleges that Nelnet attained EP status in 2004, and that Chase and Citigroup used Nelnet as a Servicer to "take advantage of [Nelnet's] EP designation." The Complaint further alleges, and Vigil argues on appeal, that Nelnet's continuing noncompliance with FFELP regulations prohibiting inducements and false advertising makes Nelnet and its co-conspirators, Chase and Citigroup, "*per se*" liable under § 1078-9(g) (2006) for all claims submitted during the three-and-one-half years Nelnet enjoyed EP status. Like the district court, we disagree.

The FCA claim in Count 4 turns on the meaning of the term "applicable program regulations" in § 1078-9(g) (2006). The purpose of § 1078-9 (2006) was to improve collection practices by Lenders and Servicers. Lenders earned EP status by complying with due-diligence requirements that specifically addressed the collection of delinquent loans. These requirements did not address the offering of prohibited inducements or false advertising used to attract eligible student borrowers. Designated Lenders and Servicers were audited for their continuing compliance with these due-diligence requirements. The Secretary was authorized to revoke EP status if a Lender or Servicer failed to maintain its ninety-seven percent or higher rate of compliance with those requirements, § 1078-9(b)(2) (2006), or if it "failed to maintain an overall level of regulatory compliance consistent with the audit . . . or if the Secretary believes the lender or servicer may have engaged in fraud in securing the designation . . . or is failing to service loans in accordance with program regulations," § 1078-9(c)(8) (2006). See 34 C.F.R. § 682.415(b)(8)(ii) (2006) (limiting the "failing to service loans" provision to "serious and material violations of the regulations").

Viewing the issue in the context of the entire statute and the purpose of the EP designation, we conclude that the phrase "failing to service loans or otherwise comply with applicable program regulations" in § 1078-9(g) (2006) was limited to the "program regulations" incorporated by reference in the due-diligence requirements

promulgated under § 1078-9(c)(7) (2006). We further note that the broader interpretation urged by Vigil, without supporting authority, would implicitly repeal or preempt the FCA's knowledge and intent requirements, the pleading requirements of Rule 9(b), and the Secretary's administrative remedies. Thus, the district court correctly ruled that Count 4 fails to state a claim.

**D. Count 3, the Conspiracy Claim.** Count 3 alleges that Nelnet, Chase, and Citigroup are liable under 31 U.S.C. § 3729(a)(3) for conspiring to defraud the federal government by getting Nelnet's false claims paid by DOEd and Guaranty Agencies. Because the Complaint fails to state claims under sections 3729(a)(1) and (2), it likewise fails to state an actionable conspiracy claim under § 3729(a)(3). Therefore, we need not consider the additional reasons argued by Chase and Citigroup for concluding that the conspiracy claims must be dismissed.[9] We affirm the district court's dismissal of Count 3.

**E. Count 5, the "Reverse Liability" Claim.** Count 5 alleges that Nelnet's "certifications of . . . compliance with [FFELP] regulations . . . avoid[ed] or decrease[d its] obligations to pay or return funds to the DOEd" in violation of the FCA's "reverse liability" provision, 31 U.S.C. § 3729(a)(7). To be actionable under § 3729(a)(7), an "obligation to pay . . . money" must exist at the time the alleged false record or statement was made or used and must be "a specific, legal obligation . . . in the nature of those that gave rise to actions of debt at common law for money or things owed." Untied States v. Q Int'l Courier, Inc., 131 F.3d 770, 773 (8th Cir. 1997). Here, the Secretary commenced no administrative proceeding seeking "reasonable

---

[9]We note that, whereas the Complaint alleged that Chase and Citigroup provided Nelnet with a \$120M line of credit "to pay for Nelnet's liabilities arising from its non-compliance," the credit agreement attached to the Complaint included a representation by Nelnet that it "is in compliance with all laws, regulations, and orders of any Governmental Authority applicable to it or its property . . . except . . . where the failure to do so, individually or in the aggregate, may not reasonably be expected to result in a Material Adverse Effect."

corrective action" for Nelnet's alleged regulatory noncompliance. <u>See</u> 34 C.F.R. § 682.700(a), .706, .709(a)-(b). Therefore, Count 5 fails to allege a specific obligation to the Government that could be the basis for a § 3729(a)(7) claim. It merely alleges a "potential or contingent obligation[] to pay the government fines or penalties which have not been levied or assessed." <u>United States ex rel. Bain v. Georgia Gulf Corp.</u>, 386 F.3d 648, 657 (5th Cir. 2004). The district court properly dismissed Count 5.

## IV.

Finally, Vigil argues the district court abused its discretion by dismissing the Complaint with prejudice without affording an opportunity to file a fourth amended complaint. Vigil does not allege that he moved for leave to amend and submitted a proposed amended complaint. There was no abuse of discretion. <u>See</u> <u>Roop</u>, 559 F.3d at 822; <u>Drobnak v. Andersen Corp.</u>, 561 F.3d 778, 787 (8th Cir. 2009).

The judgment of the district court is affirmed.

_____