The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 27, 2026

**No. A-1-CA-42148**

**STATE OF NEW MEXICO ex rel.
KENNETH STALTER,**

Plaintiff-Appellant,

v.

**NCO FINANCIAL SYSTEMS, INC.
d/b/a TRANSWORLD SYSTEMS, INC.;
WINDHAM PROFESSIONALS, INC.;
WILLIAMS & FUDGE, INC.; TODD,
BREMER & LAWSON, INC.; IMMEDIATE
CREDIT RECOVERY, INC.; CONTINENTAL
SERVICE GROUP, INC. d/b/a CONSERVE;
ALLTRAN EDUCATION, INC.; COLLECTO
d/b/a EOS CCA; ENTERPRISE RECOVERY
SYSTEMS, INC.; and NATIONAL CREDIT
MANAGEMENT CORPORATION,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Denise Barela Shepherd, District Court Judge**

Fitzpatrick Law, LLC
Sean M. Fitzpatrick
Albuquerque, NM

for Appellant

Modrall Sperling Roehl Harris & Sisk, P.A.
Jennifer G. Anderson
Elizabeth A. Martinez
Albuquerque, NM

for Appellees NCO Financial Systems, Inc., d/b/a Transworld Systems Inc., Windham Professionals, Inc., Williams & Fudge, Inc., Todd, Bremer & Lawson, Inc., Immediate Credit Recovery, Inc., Continental Service Group, Inc., d/b/a/ ConServe, Alltran Education, Inc., Collecto d/b/a EOS CCA, Enterprise Recovery Systems, Inc., and National Credit Management Corporation

Frost Echols LLC
David A. Grassi, Jr.
Chad V. Echols
Rock Hill, SC

for Appellees Windham Professionals, Inc., Williams & Fudge, Inc., and Todd, Bremer & Lawson, Inc.

Lippes Mathias LLP
Brenden H. Little
Sean M. O'Brien
Buffalo, NY

for Appellee Continental Service Group, Inc., d/b/a/ ConServe

**OPINION**

**YOHALEM, Judge.**

{1}     This is an appeal from the district court's dismissal of Plaintiff Kenneth Stalter's (Relator) qui tam complaint alleging violations of the Fraud Against Taxpayers Act (FATA), NMSA 1978, §§ 44-9-1 to -14 (2007, amended 2015). Relator's complaint alleges that each of the ten debt collection agencies named as Defendants[1] in the complaint (collectively, Defendants) violated FATA by making false or fraudulent statements, which misrepresented they were in compliance with all state laws governing debt collection (1) to the New Mexico Regulatory and Licensing Division (RLD) to fraudulently obtain a business license to collect debt in New Mexico; and (2) to state educational and health institutions (collectively, State Institutions) to fraudulently obtain well-paying contracts to collect past-due accounts for these institutions. We affirm the district court's dismissal under Rule 1-012(B)(6) NMRA of Relator's first cause of action under FATA for failure to state a claim, and reverse the district court's dismissal of Relator's second cause of action under FATA, concluding that Relator has adequately pleaded his second FATA claim that

---

[1] NCO Financial Systems, Inc. d/b/a Transworld Systems Inc. (NCO); Windham Professionals, Inc.; Williams & Fudge, Inc.; Todd, Bremer & Lawson, Inc.; Immediate Credit Recovery, Inc.; Continental Service Group, Inc., d/b/a ConServe; Alltran Education, Inc.; Collecto d/b/a EOS CCA; Enterprise Recovery Systems, Inc.; and National Credit Management Corporation.

Defendants have knowingly made a false or fraudulent claim for payment or approval of payment from state funds under Section 44-9-3(A)(2) of FATA.

**BACKGROUND**

**FATA's History and Purpose**

{2}     FATA "imposes civil liability for knowingly presenting a false or fraudulent claim for payment to the [s]tate." *Galloway v. N.M. Off. of Superintendent of Ins.*, 2025-NMSC-012, ¶ 1, 572 P.3d 855. The civil action authorized by FATA, known as a qui tam action, allows a private party, called a relator, to pursue a claim for fraud against the state in return for a share of the proceeds or penalties recovered on the state's behalf. *See id.* "A qui tam action arises only by statute, specifically authorizing a private party to sue on behalf of the government." *State ex rel. Balderas v. Bristol-Myers Squibb Co.*, 2019-NMCA-016, ¶ 2, 436 P.3d 724; *see* §§ 44-9-5 to -7 (authorizing private parties to sue on behalf of the government). New Mexico's qui tam statute is similar to the federal False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, which was first enacted during the civil war to stem fraud by defense contractors who were gouging the Northern armies by over-pricing goods and services. *See Galloway*, 2025-NMSC-012, ¶¶ 9-10.

{3}     Like the FCA, FATA's purpose is to "compensate[] the [s]tate for losses incurred as a result of fraud and encourage[] qui tam plaintiffs to bring civil actions to root out fraud." *State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 2015-NMSC-025,

¶ 31, 355 P.3d 1. Because there is little New Mexico precedent construing FATA, we often turn to federal precedent construing comparable FCA provisions for guidance. *See Foy*, 2015-NMSC-025, ¶ 16 ("We find the cases construing FATA's federal analogue, the [FCA], helpful in understanding the context and purpose of FATA.").

**Relator's Qui Tam Complaint**

{4}     Relator filed a qui tam complaint in May 2022, and a first amended complaint on November 10, 2023,[2] alleging that Defendants fraudulently claimed to be in compliance with all provisions of state and federal law governing debt collection agencies, knowing that they were not complying and did not intend to comply with at least three requirements imposed by the New Mexico Collection Agency Regulatory Act (CARA), NMSA 1978, §§ 61-18A-1 to -33 (1987, amended 2022): (1) that "[e]very licensed office of a collection agency, whether a principal or branch office, shall be under the active charge of a licensed manager," § 61-18A-22(A); (2) that the licensed manager employed by the collection agency shall be "physically present at the licensee's office at least 75 percent of the time during which the office is open for business," § 61-18A-22(B); and (3) that every licensed foreign collection agency "shall establish and maintain a collection agency in New Mexico at all times

---

[2]We refer throughout this opinion to the first amended complaint.

during the life of any collection agency license issued to the foreign corporation or partnership," § 61-18A-14.

{5} The complaint further alleges that Defendants violated FATA by making the same false or fraudulent statements of compliance with all state laws governing debt collection (1) to RLD to fraudulently obtain a license to collect debt in New Mexico, and (2) to the State Institutions to fraudulently obtain well-paying contracts to collect past-due accounts for these institutions. The first FATA claim, based on the misrepresentations to RLD, alleges that RLD relied on Defendants' misrepresentations to license them as a debt collection business in New Mexico, and that these licenses in turn allowed Defendants to qualify for paid contracts with the State Institutions.

{6} Relator's second FATA claim is that Defendants made knowingly false representations to the State Institutions to obtain paying contracts with them. The complaint alleges that in their responses to requests for proposals (RFPs) for contracts for debt collection and in the contracts for debt collection services themselves, Defendants misrepresented both their current compliance with state law and their intent to perform all debt collection activities under a contract with the State Institutions "in accordance with all applicable federal and state laws and regulations." The complaint claims that the State Institutions granted contracts to each Defendant to collect unpaid debt owed to the state and agreed to make payments

to Defendants upon submission of invoices. These payments collectively totaled millions of dollars. Most if not all of the contracts required Defendants to agree that they would conduct their collections work "in accordance with all applicable federal and state laws and regulations."

{7} In support of its allegations that Defendants' representations of compliance with CARA were knowingly false or fraudulent, the complaint includes excerpts of public records obtained from RLD that show that the four licensed managers identified by Defendants together managed a total of 842 collection agencies. The complaint represents that it is impossible, based on these figures, for these managers to meet CARA's requirement for each collection agency to have a manager who is physically present 75 percent of the time the office is engaged in collections— something Relator claims is a requirement of state law. The complaint includes photographs taken at the New Mexico addresses listed by Defendants as their New Mexico branch offices showing that each address is a private residence owned by one of the managers.

**Defendants' Motion to Dismiss**

{8} Defendants filed a joint motion to dismiss the complaint in its entirety, along with three memoranda in support.[3] Defendants' joint motion to dismiss first alleged

---

[3]All references to the motions to dismiss in this opinion are to the amended motions to dismiss and memoranda in support filed by Defendants.

that Relator's failure to exhaust internal remedies when he was previously employed by the state, as required by Section 44-9-9(A) of FATA, denied the district court subject matter jurisdiction over Relator's FATA claims. Then, assuming the district court had jurisdiction, Defendants argued that the complaint failed to state a claim on which relief could be granted under Rule 1-012(B)(6).

{9} The district court rejected Defendants' Section 44-9-9(A) argument, concluding that the exhaustion requirement did not apply to Relator under the facts alleged in the complaint. Finding that the complaint alleged only a violation of licensing law, the district court agreed with Defendants that Relator's complaint failed to state a cognizable claim for fraud against the state under FATA and granted Defendants' motion to dismiss the complaint. In its memorandum opinion and order, the district court construed Relator's complaint as alleging a single cause of action under FATA—that Defendants made false or fraudulent representations to RLD to obtain a license. The district court concluded that false representations made to a licensing agency to obtain a license are not requests or demands for payment from the state which state a "claim" as that term is defined by FATA. *See* § 44-9-2(A) (defining a "claim" as "a request or demand for money, property or services when all or a portion of the money, property or services requested or demanded issues from or is provided or reimbursed by the state"). The district court found that the complaint failed to plead that Defendants made a fraudulent request or demand for

payment from the state, a requirement to state an actionable "claim" under FATA. Rejecting Relators' argument that obtaining the licenses was part of a long chain of events designed to obtain payment under Defendants' contracts with the State Institutions, the district court found that the complaint alleged only fraud in obtaining a license, and dismissed the complaint in its entirety.[4]

{10}    Relator appealed, arguing both that the district court erred in dismissing his FATA claim alleging fraud in obtaining a license and that the district court erred in failing to consider what he identifies as the complaint's separate FATA claim of fraud in inducing the State Institutions to enter into well-paying contracts with Defendants.

---

[4]We note that Defendants' motions to dismiss, the three memoranda of law in support of dismissal, Relator's response to the motions to dismiss, and Relator's argument at the hearings on the motions to dismiss addressed both the complaint's allegations of fraud in obtaining a license, and the long chain to payment, *and* as a second, separate FATA claim, the allegations that Defendants made false or fraudulent statements to induce the State Institutions to enter into well-paying contracts for debt collection services. It is not clear whether the district court failed to consider this second claim, or whether the court saw no difference between the claims and treated all of the claims as fraud in licensing, consistent with Defendants' arguments in their motion to dismiss. Our review of the record shows that Relator pleaded and preserved two distinct FATA claims for our review on appeal, and we therefore address both claims.

**DISCUSSION**

**I.      The District Court Had Subject Matter Jurisdiction Over Relator's FATA Claims**

{11}    We begin with a brief discussion of Defendant NCO's claim that the district court lacked subject matter jurisdiction over Relator's FATA claims under the terms of Section 44-9-9(A). Section 44-9-9(A) states as follows:

> No court shall have jurisdiction over an action brought pursuant to Section 44-9-5 . . . by a present or former employee of the state or political subdivision unless the employee, during employment with the state or political subdivision and in good faith, exhausted existing internal procedures for reporting false claims and the state or political subdivision failed to act on the information provided within a reasonable period of time.

{12}    Only NCO questions on appeal the district court's decision that Section 44-9-9(A) does not apply under the circumstances of this case because Relator did not discover the claims raised in his complaint until long after he left state government service. NCO argues on appeal that the district court lacked subject matter jurisdiction over Relator's FATA claims based on Relator's alleged failure to comply with Section 44-9-9(A)'s exhaustion requirement.

{13}    NCO argues that this Court must first decide this issue before addressing any other claim on appeal because it puts in doubt the district court's subject matter jurisdiction and would require immediate dismissal of this appeal if, as NCO contends, Relator was required to exhaust state internal procedures consistent with the requirements of Section 44-9-9(A). *See Smith v. City of Santa Fe*, 2007-NMSC-

055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[W]hen a jurisdictional claim is raised, the issue must be decided before a court can review the case."). If, however, the exhaustion of state internal procedures is merely a condition precedent to the filing of a FATA complaint, and not a jurisdictional bar, we review the district court's ruling only as an alternative ground for affirmance if this Court reverses the district court in whole or in part. *See* Rule 12-201(C) NMRA ("An appellee may . . . raise issues on appeal . . . for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from.").

{14}     We conclude that Section 44-9-9(A)'s exhaustion requirement is a condition precedent to the filing of a FATA claim and not a limit on the district court's subject matter jurisdiction. Both Subsections (A) and (B) of Section 44-9-9 begin by stating in relevant part that "[n]o court shall have jurisdiction over an action brought pursuant to Section 44-9-5." Our Supreme Court has addressed whether this language limits the district court's subject matter jurisdiction, holding in the context of the identical language in Subsection (B) of Section 44-9-9 that "the question before the Court is not really one of jurisdiction." *Foy*, 2015-NMSC-025, ¶ 8. The Court concluded that "[t]he district court had subject matter jurisdiction over this action" under the "general scope of authority conferred upon the district court by Article VI, Section 13 of the New Mexico Constitution." *Foy*, 2015-NMSC-025, ¶ 8. Although the statutory language refers to "jurisdiction," our Supreme Court

concluded that the Legislature created a condition precedent to filing a claim under FATA, and not a jurisdictional bar. Because there is no difference between the relevant language of the two provisions, we conclude that Subsection (A) of Section 44-9-9, like Subsection (B) of Section 44-9-9, is not jurisdictional and instead merely imposes a condition precedent to the filing of a FATA action.

{15}    Because this is not an issue involving the subject matter jurisdiction of either the district court or of this Court, we reserve consideration of the merits of NCO's argument that Relator failed to comply with Section 44-9-9(A) until the end of our opinion, where, having reversed the district court's decision in part, we address whether affirmance is required by this alternative ground. *See* Rule 12-201(C).

{16}    We next address Relator's claims of error in the district court's dismissal of each of Relator's two FATA claims—for fraud in licensing and for fraud in procuring contracts with the State Institutions to collect past-due debt—for failure to state a claim.

**II.     The Defendants' Motions to Dismiss for Failure to State a Claim**

**A.      Standard of Review**

{17}    A motion to dismiss "is infrequently granted because its purpose is to test the law of the claim, not the facts that support it." *Env't Improvement Div. of N.M. Health & Env't Dep't v. Aguayo*, 1983-NMSC-027, ¶ 10, 99 N.M. 497, 660 P.2d 587. In reviewing a district court's decision to dismiss for failure to state a claim,

"we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342. "A Rule [1-0]12([B])(6) motion is only proper when it appears that [a] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71 (emphasis, internal quotation marks, and citation omitted). We review a motion to dismiss a complaint for failure to state a claim under Rule 1-012(B)(6) de novo. *Quarrie v. N.M. Inst. of Mining & Tech.*, 2021-NMCA-044, ¶ 5, 495 P.3d 645.

{18}     We note that our Supreme Court in *Galloway*, recently clarified that the ordinary notice pleading standard in Rule 1-008 NMRA applies to complaints in civil actions under FATA. Our Supreme Court held that Rule 1-009(B) NMRA, which provides for particularity in pleading fraud, "should not be read to abrogate the efficiency and simplicity of notice pleading. Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of FATA." *Galloway*, 2025-NMSC-012, ¶ 34 (internal quotation marks and citation omitted).

**B.     Relator's Claim of Error in the Dismissal of the Complaint's Fraud in Licensing Claim is Without Merit**

{19}     We next address Relator's appeal from the district court's dismissal of his fraud in licensing claim. Relator contends that it was error for the district court to conclude that "FATA does not provide a remedy for improper licensing." In support

of this contention, Relator argues that the remedial purpose of FATA requires that it be construed broadly and, in the absence of an explicit statutory requirement that the false statement required by FATA be made directly to the paying entity, a chain of causation running from a false statement made to a licensing agency; followed by using the business's licensed status to apply for a contract with the state; followed by obtaining a state contract to conduct licensed work; followed by payment for work invoiced under that contract should be recognized as stating a valid claim for "knowingly mak[ing] or us[ing] . . . a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim" under Section 44-9-3(A)(2) of FATA.

{20} Relator cites only two cases in his brief on appeal to support his licensing argument. We do not agree with Relator that these cases address the issue he raises on appeal. Neither case supports Relator's argument that an extended chain of causation from fraud in obtaining a business license to payment for work invoiced under a contract with the state states a cause of action under Section 44-9-3(A)(2) for obtaining payment from the state by making a false representation. Neither case cited by Relator involves fraud in obtaining a license or addresses an extended chain of causation between the fraudulent statement and payment from the state.

{21} The first cited case, *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005), addresses fraud in the process of procuring a government contract

for payment from state funds. *Main* holds that where a material fraudulent statement is made in the process of applying for or procuring a paying contract with the government, the relator has stated a claim under FATA. *Id.* at 916. *Main*, however, does not address either a fraudulent statement made to obtain a business license or the extended chain of causation Relator argues supports his FATA claim.

{22} The only other authority Relator cites, *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943), *superseded by statute on other grounds as stated in Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 412 (2011), involves allegations that respondents defrauded the government by collusively bidding for a government contract. Like the fraud in *Main*, this is a fraudulent scheme executed directly in the procurement process to induce the government to award a contract for payment to respondents. *See id.* at 542-44. *Marcus*, like *Main*, does not address either fraud in applying for a business license or the adequacy of a distant causal connection with a fraudulent statement made in a licensing process and not in the process of applying for a paying contract with the government.

{23} On appeal, it is the appellant's burden to demonstrate affirmatively to this Court that error occurred in the district court, and that such error warrants reversal. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). Where an appellant fails to provide an

argument applying the relevant law to the particular facts and circumstances, to cite to relevant authority, and to explain why the district court erred, we apply our presumption of correctness and affirm. *See State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 8, 447 P.3d 1159. Because Relator's conclusory arguments do not demonstrate error in the district court's dismissal of the complaint's FATA claim based on fraudulent statements made in obtaining a business license, we affirm the district court's dismissal of this claim.

**C.      The Complaint's Claim for Fraud Against the State in Procuring Well-Paying Contracts Adequately States a Claim for Relief Under FATA**

{24}      Finally, we review the district court's dismissal of Relator's remaining claim for fraud in procuring well-paying contracts with the State Institutions for debt collection services and conclude that Relator's complaint adequately states a FATA claim under our rules of pleading.

**1.      The Elements of a FATA Cause of Action**

{25}      Relator's complaint alleges, in relevant part, that Defendants have engaged in three of the nine acts prohibited by Section 44-9-3(A) of FATA: (1) Section 44-9-3(A)(1)'s prohibition on "knowingly present[ing] . . . a false or fraudulent claim for payment or approval" of payment from the state; (2) Section 44-9-3(A)(2)'s prohibition on knowingly making or using "a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim"; and (3) Section 44-9-3(A)(3)'s prohibition on conspiring to

defraud the state "by obtaining approval or payment on a false or fraudulent claim." Having affirmed the dismissal of Relator's claims against Defendants for making false statements to RLD to obtain a license, we focus solely on Relator's remaining claim—that Defendants falsely represented their compliance and their intent to comply in the future with CARA's physical location and on-site management provisions to induce the State Institutions to award them well-paying contracts and to pay the amounts invoiced under those contracts.

{26}    Defendants contend that the complaint fails to adequately plead the following elements they argue are necessary to state a claim for relief under FATA: (a) Defendants made "false or fraudulent" statements about their compliance with state and federal law; (b) the statements were "knowingly" false or fraudulent; (c) the false or fraudulent statements were material to the State Institutions' agreement to pay Defendants for debt collection services; and (d) the State Institutions suffered injury or damages from the alleged fraud. We address these claims in turn.

**a.    "False or Fraudulent" Statements**

{27}    The complaint alleges that Defendants' statements that they were in compliance with "all applicable federal and state laws and regulations" and that they intended to perform debt collection services for the State Institutions "in accordance with all applicable laws and regulations" if given a contract, were false and fraudulent statements under FATA. Defendants respond that even accepting the

complaint's statements of fact as true, Defendants' assurance of full compliance with state law governing debt collection was neither false nor fraudulent, as those terms are used by FATA. Defendants argue that they were merely stating truthfully that they are licensed by RLD to collect debt in New Mexico. Defendants' argument is not well-taken.

{28} The false statements identified by the complaint are not simply statements that Defendants are licensed in New Mexico: they are plainly assurances of the Defendants' intent to comply with "all state laws and regulations" governing debt collection activities, not just with the requirement that they be licensed. The complaint adequately pleads with supporting facts obtained from RLD documents that Defendants' licensed managers supervised hundreds of collection agencies at a time, and worked from private residences—facts inconsistent with an intent to comply with CARA's requirement that managers be present on-site at a physical office location in New Mexico seventy-five percent of the time the office is open for business.

{29} The test for whether a complaint has adequately stated a claim is whether there is any state of facts where Defendants' statements could be shown to be false, misleading or fraudulent, not whether there is any state of facts where they might be shown to be true. *See Valdez*, 2002-NMSC-028, ¶ 4. We are not persuaded by Defendants' argument that these statements are obviously true because each

Defendant is licensed in New Mexico. These statements can be read as falsely representing that each Defendant intended to comply with state law requirements for physical locations supervised by on-site managers, when they had no intention of doing so. *See Main*, 426 F.3d at 917 ("[F]raud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do.").

{30} Defendants' claim that these statements were not misrepresentations cannot be resolved without inquiry into the facts. We therefore conclude that Relator has sufficiently pleaded that Defendants made false or fraudulent statements, the first element of a FATA claim.

**b. The False or Fraudulent Statements Were "Knowingly" Made**

{31} Defendants further claim that even if their statements of intent to comply with all New Mexico law governing debt collection could be viewed as objectively false, the complaint has not alleged facts sufficient to support the FATA requirement that the statements were "knowingly" false. Defendants argue that they believed they were simply stating that they were licensed in New Mexico and that they also believed that the issuance of a license by RLD was proof that they were fully in compliance with state law. Defendants argue that Relator's complaint does not allege sufficient facts to refute their claim that they honestly believed their statements were true when they made them.

{32} FATA defines "knowingly" as meaning "that a person, with respect to information, acts: (1) with actual knowledge of the truth or falsity of the information; (2) in deliberate ignorance of the truth or falsity of the information; or (3) in reckless disregard of the truth or falsity of the information." Section 44-9-2(C)(1)-(3). Further, FATA provides that "[p]roof of specific intent to defraud" is not required, Section 44-9-3(B), only that a defendant acted knowingly: that they lied, deliberately ignored information, or acted in reckless disregard of the falsity of the statement. *See* § 44-9-3(A).

{33} By stating that Defendants' managers were supervising hundreds of agencies from private homes and that Defendants had listed no other physical business locations in New Mexico, the complaint alleges facts sufficient to support its claim that Defendants acted knowingly and that they were not being truthful when they assured the State Institutions that they were in compliance with all state laws governing collections and intended to continue to comply with those laws during the term of their contract. Once again, Defendants' claim to have had no knowledge that they were in violation of CARA raises a question of fact. Alleging facts that contradict the complaint does not provide grounds for dismissal of a complaint for failure to state a claim. The complaint plainly puts Defendants on notice both of Relator's claim that they made knowingly false and fraudulent statements and of the

factual basis for that claim. We agree with Relator that this is all that is required to withstand a motion to dismiss.

### c. The False Statements Were Material

{34} Defendants also challenge the sufficiency of the facts pleaded in the complaint to support the requirement that a false statement is fraudulent only if it is material to the transaction at issue. Defendants argue that the complaint fails to sufficiently plead that collection agencies' compliance with state law requiring on-site supervision of collections work and physical locations in New Mexico was material to the decisions of the State Institutions to award collections contracts to Defendants and to pay Defendants' invoices for the services provided.

{35} On appeal, both Relator and Defendants rely on the United States Supreme Court's opinion in *Universal Health Services, Inc. v. United States*, 579 U.S. 176 (2016), a case construing the FCA and holding that to state an actionable claim for fraud against the government under the FCA, a false representation of compliance with state law must be material to the government's payment decision. *See id.* at 181. Under the FCA's definition of "material," only promises of compliance with state or federal law "'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property,'" are material. *Id.* at 182 (quoting 31 U.S.C. § 3729(b)(4)). The United States Supreme Court holds that this materiality requirement should be applied strictly, in order to avoid the FCA

becoming "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 194.

{36}     We agree with the parties that a relator alleging a claim under FATA must allege facts supporting the materiality of the false statement to the state agency's payment decision to state a claim for relief. Although FATA, in Section 44-9-3(A)(2), has not adopted the FCA's clarifying amendments made by Congress in 2009, which amended the section to explicitly require the false statement to be "material" to the payment of state funds, we see little change in legislative intent to require that the false statement be material to the payment sought from the government. *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a), 123 Stat. 1617, 1621-22 (amending the FCA to clarify the materiality requirement).[5] A requirement of materiality was always implicit in FATA's language requiring that a false or fraudulent statement that violates FATA be made "to obtain or support the approval of . . . payment" from state funds. Section 44-9-3(A)(2).

{37}     Our Supreme Court has held that FATA does not require a showing of either a defendant's specific intent to defraud or of a state official's reliance on the false statement. *See Galloway*, 2025-NMSC-012, ¶ 35 (holding that "FATA does not

[5]The 2009 amendment of the FCA is entitled: "Clarifications to the [FCA] to Reflect the Original Intent of the Law." *See* Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21, § 4(a), 123 Stat. 1617, 1621.

*require* a showing of specific intent [or] reliance"). Relator was therefore only required to allege that Defendants' false or misleading statements were *objectively* material to obtaining payment—no claim of subjective intent to defraud or reliance is required.

{38}     Applying the requirement of materiality to the pleaded facts, we conclude that Relator has adequately pleaded the materiality of Defendants' false statements. The complaint alleges that compliance with requirements for oversight by an on-site manager is necessary to "guarantee . . . ethical collection practices," and that the failure to comply with CARA's oversight requirements "thwarts the purposes" of New Mexico's laws governing debt collections. Accepting these pleaded facts as true, as we must in reviewing a motion to dismiss for failure to state a claim, we conclude that Defendant has pleaded facts that are sufficient to allege the materiality to payment under the contract of Defendants' false statements.

**d.     The Complaint Need Not Plead Damages**

{39}     Defendants argued in the district court, and renew their argument on appeal, that injury or damages to the state is an element of a FATA claim, and that Relator has failed to allege such damages. Relator contends in response that damages are not an element of a FATA claim and, therefore, they need not be alleged in the complaint. We agree with Relator. In its recent decision construing FATA, our Supreme Court held that unlike a common law fraud claim, a FATA claim does not

require a showing that the state suffered an injury. *See Galloway*, 2025-NMSC-012, ¶¶ 30, 35. The Court further noted that "[m]erely showing that the violation occurred suffices to recover a monetary penalty." *Id.* ¶ 35.

### III. The Exhaustion Requirement of Section 44-9-9(A) Does Not Apply to Relator

{40} Because we have reversed the district court in part, we consider NCO's alternative argument for affirmance, as permitted by Rule 12-201(C) ("An appellee may . . . raise issues on appeal . . . for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from").

{41} NCO argues that Relator, a former state employee, failed to exhaust existing internal procedures for reporting fraud during his employment, contrary to Section 44-9-9(A). Section 44-9-9(A) provides that "[n]o court shall have jurisdiction over an action brought pursuant to Section 44-9-5 . . . by a present or former employee of the state or political subdivision unless the employee, during employment with the state or political subdivision and in good faith, exhausted existing internal procedures for reporting false claims."

{42} Relator alleges in his amended complaint that his last employment with the state ended in 2018, and that he did not become aware of the fraudulent claims of compliance with state law made by Defendants that form the basis of his FATA complaint until 2021, three years after he left state employment.

{43} "In construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, [appellate courts] look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586.

{44} Defendant NCO's construction of Section 44-9-9(A) to require a former state employee to have reported and exhausted a claim of fraud against the state—even when the former employee did not discover the alleged fraud until years after their employment ended—is inconsistent with the purpose of FATA to "compensate[] the [s]tate for losses incurred as a result of fraud" and, to that end, to "encourage[] qui tam plaintiffs to bring civil actions to root out fraud." *Foy*, 2015-NMSC-025, ¶ 31. The purpose of Section 44-9-9(A) is to prevent a state employee from being tempted to ignore their obligation to their employer and instead seek personal benefit when they discover fraud *during their employment*. Section 44-9-9 prohibits an employee from keeping the discovery to themselves, waiting until they leave state employment, and then enriching themselves at the expense of the state by filing a qui tam action under FATA. *See* § 44-9-7(A), (B) (providing qui tam plaintiffs awards of up to "thirty percent of the proceeds of the action or settlement"). When

the fraud is discovered *after* the employment ends, however, this rationale simply does not apply.

{45} The district court did not err in concluding that Relator, who was a private citizen at the time he discovered the fraud against the state alleged in this qui tam action, was not required by Section 44-9-9(A) to exhaust internal state procedures. Section 44-9-9(A), therefore, does not require dismissal of Relator's FATA complaint.

**CONCLUSION**

{46} For the reasons stated, we conclude that Relator has stated a FATA claim against Defendants for knowingly making a material false or fraudulent statement of compliance with state law in the process of procuring contracts with the State Institutions, and that those misrepresentations were made or used to obtain payment or approval of payment from the state. We therefore reverse the district court's dismissal of this second pleaded FATA claim, and remand for further proceedings. We affirm the district court's dismissal of all other claims.[6]

---

[6]NCO argued, as an alternative basis for affirming the dismissal of the complaint against it, that the complaint incorrectly alleges that NCO and Transworld Systems, Inc. (TSI) are the same company. NCO's argument disputes the allegation of fact stated in the complaint, that NCO "changed its name to [TSI]." A dispute of fact like this one is not properly disposed of by a motion to dismiss the complaint. We do not foreclose NCO from raising this issue on remand in a motion for summary judgment or at trial.

{47}     **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**GERALD E. BACA, Judge**


_____
**KATHERINE A. WRAY, Judge**